IN  THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| PATRICK J. QUESENBERRY, | * | |
| Petitioner | * | |
| v. | * | Civil Action No. RDB-14-1375 |
| FRANK J. BISHOP, JR., | * | |
| and THE ATTORNEY GENERAL OF THE STATE OF MARYLAND, | * | |
| Respondents | * | |

\*\*\*

## MEMORANDUM OPINION

On April 14, 2014,[1] Petitioner Patrick J. Quesenberry filed the instant 28 U.S.C. § 2254 habeas corpus application attacking his 2009 convictions for attempted rape and related offenses and burglary.  (ECF No. 1).  Respondents filed an Answer to the Petition, arguing that the Petition does not state a basis for relief and should be denied, without a hearing, on that basis. (ECF No. 4).  Quesenberry filed a Reply to Respondent' Answer (ECF No. 5) and, subsequently, a Second Reply (ECF No. 20).  After reviewing these papers, the Court finds no need for an evidentiary hearing.  *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts; see also* 28 U.S.C. §2254(e)(2).  For the reasons set forth herein, the Court shall DENY AND DISMISS the Petition with prejudice.

## PROCEDURAL HISTORY

---

[1] The Petition was signed on April 14, 2014, and is deemed filed on that day.  *See Houston v. Lack*, 487 U.S. 266, 276 (1988).

On February 24, 2009, after a bench trial in the Circuit Court for Wicomico County, Quesenberry was convicted of multiple counts of burglary, attempted rape, and related sexual offenses. (ECF No. 1, pp. 1-2 ; Resp. Ex. 4, pp. 225-26, 228-29).[2] He was sentenced to life plus ten years in prison. (ECF No. 1, p. 1). Quesenberry appealed his convictions to the Court of Special Appeals of Maryland, raising four grounds for relief.[3] (ECF No. 1, p. 2; Resp. Ex. 6). The Court of Special Appeals affirmed the judgments in an unreported opinion dated February 10, 2011, and the court's Mandate issued on March 14, 2011. (ECF No. 1, pp. 2, 4; Resp . Ex. 8). Quesenberry did not seek further review. (ECF No. 1, p. 4).

Quesenberry filed a *pro se* petition for post-conviction relief in the circuit court on January 25, 2012. (ECF No. 1, pp. 4, 6; Resp. Ex. 11, p. 3).[4] On. March 29, 2012, he filed a counseled amended/supplemental petition and, subsequently, five additional *pro se* amended/ supplemental petitions. (ECF No. 1, pp. 6-8; Resp. Ex. 9; Resp. Ex. 11, pp. 3-4).[5] After hearing, the circuit court denied the petition on April 1, 2013. (Resp. Ex. 11). Quesenberry filed an application for leave to appeal the denial to the Court of Special Appeals, (Resp. Ex. 12), which

---

[2] All page numbers reflect the ECF pagination, with the exception of Respondents' Exhibits, which were not electronically filed.

[3] On direct appeal, Quesenberry raised the following grounds:

> Was the evidence sufficient to sustain the convictions?,
> Was it error to admit into evidence the expert opinion of the SAFE Nurse that she personally believed the rape complaintant [sic] to be true?,
> Was it error to admit DNA evidence obtained without a warrant or court order?,
> Was it error to admit Appellant's statement made during custodial interrogation?.

(ECF No. 1, p. 2).

[4] All issues contained in the initial *pro se* petition were waived in open court during the January 31, 2013, post-conviction hearing. (Resp. Ex. 11, p. 3; ECF No. 13-1, pp. 12-15).

[5] At the court's direction, counsel filed a post-hearing memorandum clarifying the issues before the court. (Resp. Ex. 10; ECF No. 13-1, p. 76).

summarily denied the application on February 21, 2014, (Resp. Ex. 13). The appellate court's

Mandate issued on March 24, 2014. *Id.*

Quesenberry filed the instant Petition on April 14, 2014.[6]

## DISCUSSION

Quesenberry presents three claims for this Court's review: first, that he was denied due

process because the DNA Collection Act was circumvented; second, that his due process rights

under the Sixth and Fourteenth Amendments were violated because he was denied compulsory

process of obtaining witnesses in his favor due to the circuit court's denial of his motion to

suppress; and third, his Fourth, Fifth, and Fourteenth Amendment rights were violated because

he was arrested without probable cause, all evidence obtained was illegally used at trial, and he

was denied a *Franks*[7] hearing regarding probable cause. (ECF No. 1, pp. 11, 15, 18.)

## EXHAUSTION AND PROCEDURAL DEFAULT

The exhaustion doctrine, codified at 28 U.S.C. 2254(b)(1),[8] "is principally designed to

protect the state courts' role in the enforcement of federal law and prevent disruption of state

judicial proceedings. Under our federal system, the federal and state courts [are] equally bound

---

[6] *See* n. 1.

[7] *Franks v. Delaware*, 438 U.S. 154 (1978).

[8] Section 2254(b)(1) states that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the
> judgment of a State court shall not be granted unless it appears that--
> (A) The applicant has exhausted the remedies available in the courts of the State; or
> (B) (i) there is an absence of available State corrective process; or
>       (ii) circumstances exist that render such process ineffective to protect the
>       rights of the applicant.
> (C) An applicant shall not be deemed to have exhausted the remedies available in the courts of the
>       state, within the meaning of this section, if he has the right under the law of the state to raise,
>       by any available procedure, the question presented.

28 U.S.C. § 2254(b)(1).

to guard and protect rights secured by the Constitution." *Rose v. Lundy*, 455 U.S. 509, 518 (1982)(alteration in original)(internal citations and quotation marks omitted). Moreover, "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation ...." *Id.* Thus, the *Rose* Court cautioned litigants, "before you bring any claims to federal court, be sure that you first have taken each one to state court." *Id.* at 520; *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 839 (1999)("Federal habeas relief is available to state prisoners only after they have exhausted their claims in state court.").

In *O'Sullivan*, the Supreme Court stated: "To ... 'protect the integrity' of the federal exhaustion rule, we ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies, *i.e.*, whether he has fairly presented his claims to the state courts." 526 U.S. at 848 (internal citation omitted); *see also id.* at 844 ("Section 2254(c)[9] requires only that state prisoners give the state courts a *fair* opportunity to act on their claims."). The inquiry, then, is "[w]hether a prisoner who fails to present his claims in a petition for discretionary review to a state court of last resort has *properly* presented his claims to the state courts. ... Because we answer this question 'no,' we conclude that [petitioner] has procedurally defaulted his claims." *Id.* at 848. Stated differently, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Id.* at 845. The *O'Sullivan* Court noted, however, that:

> In this regard, we note that nothing in our decision today requires the exhaustion

---

[9] Section 2254(c) provides that: "An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

of any specific remedy when a State has provided that that remedy is unavailable. Section 2254(c), in fact, directs federal courts to consider whether a habeas petitioner has "*the right under the law of the State to raise, by any available procedure,* the question presented." (Emphasis added.) The exhaustion doctrine, in other words, turns on an inquiry into what procedures are "available" under state law.  In sum, there is nothing in the exhaustion doctrine requiring federal courts to ignore a state law or rule providing that a given procedure is not available.

*Id.* at 847-48. [10]

Respondents argue that Quesenberry's third ground for relief, that his rights were violated because he was arrested without probable cause, all evidence obtained was illegally used at trial, and he was denied a *Franks* hearing regarding probable cause, is unexhausted. (ECF No. 4, pp. 11, 19).  Quesenberry acknowledges that the claim has not been presented to the state courts.  (ECF No. 1, p. 10).  As already noted, § 2254(c) provides that "[a]n applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."  28 U.S.C. § 2254(c).  It appears that Quesenberry is precluded from doing so now, because under Maryland law a petitioner may bring only one petition for post-conviction relief.  *See* Md. Code Ann. Crim. Proc., § 7-103(a).  Therefore, the claims contained in Quesenberry's third ground for relief have been procedurally defaulted.

When a claim is procedurally defaulted, a federal court may not address the merits of a state prisoner's habeas claim unless the petitioner can show: (1) both cause for the default and prejudice that would result from failing to consider the claim on the merits; or (2) that failure to

---

[10]  In addition, procedural default may occur when a state court declines "to consider the merits [of a claim] on the basis of an adequate and independent State procedural rule."  *Yeatts v. Angelone,* 166 F.3d 255, 260 (4th Cir. 1999).  "A procedural default also occurs when a habeas petitioner fails to exhaust available State remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.' "  *Breard v. Pruett,* 134 F.3d 615, 619 (1998) (quoting *Coleman v. Thompson,* 501 U.S. 722, 375 n.1 (1991)).

consider the claim on the merits would result in a fundamental miscarriage of justice, i.e., the conviction of one who is actually innocent. *See Murray v. Carrier*, 477 U.S at 495-96 (1986). "Cause" consists of "some factor external to the defense [that] impeded counsel's efforts to raise the claim in State court at the appropriate time." *Breard,* 134 F.3d 615, 620 (4th Cir. 1998). Even when a petitioner fails to show cause and prejudice for a procedural default, a court must still consider whether it should reach the merits of a petitioner's claims in order to prevent a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U.S. 298, 314 (1995). Whether Quesenberry has demonstrated cause and prejudice for failing to present the claims to the state courts, or that a fundamental miscarriage of justice will occur if this Court does not address the claims, will be discussed *infra*.

## STANDARD OF REVIEW

An application for writ of habeas corpus may be granted only for violations of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). Section 2254(d) provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States: or
>
> (2) resulted in a decision that was based on a unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. 2254(d). The statute sets forth a "highly deferential standard for evaluating state-court rulings, *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997), and is "difficult to meet," *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court "arrives at a conclusion opposite to that reached by the [Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme] Court." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).   Under the "unreasonable application analysis" under 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562  U.S. 101 (2011)(quoting *Yarborough.v Alvarado*, 541 U.S. 652, 664 (2004)).   Thus, "an unreasonable application of federal law is different from an incorrect application of federal law.  *Id.* at 785 (internal quotation marks omitted).

Under § 2254 (d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010).   "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," *id.*, a federal court may not conclude that the state court decision was based on an unreasonable determination of the facts, *id.*  "[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett*, 559 U.S. 766, 773 (2010).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1).   "The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*  "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state

court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4ᵗʰ Cir. 2010).  This is especially true where the

state court has "resolved issues like witness credibility, which are 'factual determinations' for

purposes of Section 2254(e)(1)."  *Id.* at 379.  Quesenberry's claims will be examined under this

framework.

## I.  QUESENBERRY'S CLAIMS

### A.  GROUND ONE

Quesenberry argues that:

Petitioner was denied due process because the DNA Collection Act, Public Safety
Art. Sections 2-508 and 2-510 were circumvented.  The DNA results were not
verified by the Director that a match was made in [the] statewide DNA data base
system.

(ECF No. 1, p. 11).  The result, Quesenberry stated in his April 30, 2012 amended/supplemental

state petition, was a wrongful conviction.  (Resp. Ex. 9; Resp. Ex. 11, p. 11).

It is clear that Quesenberry is alleging a violation of state law, not a federal constitutional

or statutory violation.  As such, the claim is not cognizable under § 2254.  *See* 28 U.S.C. §

2254(a) (noting that "a district court shall entertain an application for a writ of habeas corpus in

behalf of a person in custody pursuant to the judgment of a State court only on the ground that he

is in custody in violation of the Constitution or laws or treaties of the United States."); *id.* §

2254(d) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to

the judgment of a State court shall not be granted with respect to any claim that was adjudicated

on the merits in State court proceedings unless the adjudication of the claim-- (1) resulted in a

decision that was contrary to, or involved an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a

decision that was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding."). Quesenberry states that his first claim of error is

"based on "Due Process Grounds," (ECF No. 1, p. 9), and argued at the January 31, 2013,

hearing that he was denied due process of law because "the procedures weren't followed under

the rules," (ECF No. 13-1, p. 57), in that the DNA used at trial was not verified, *id.* at 36, 56-57.

The mere reference to due process in the context of an alleged violation of Maryland laws and/or

rules, however, is not enough to bring the claim within the ambit of § 2254.

Even if cognizable, the claim would fail on the merits. Quesenberry presented the

identical claim to the post-conviction court in a *pro se* amended/supplemental post-conviction

petition filed on April 30, 2012. (Resp. Ex. 9; Resp. Ex. 10, p. 2). After noting that this petition

was filed after his counseled petition and was not signed by counsel, in violation of Maryland

court rules, the circuit court stated that it would, nonetheless, consider all allegations raised in

Quesenberry's multiple petitions other than those withdrawn in open court. (Resp. Ex. 11, p. 2).

The court rejected Quesenberry's DNA claim, stating:

> The Petitioner alleged that Maryland Public Safety Code §§ 2-508(a)(1)(iv) and §
> 2-510, were violated when the unverified DNA evidence was admitted into
> evidence at trial. The language of § 2-508 of the Maryland Public Safety Code
> reads, in pertinent part:
>
>> On written or electronic request after verification by the
>> Director[11] that a match has been has been made in the population
>> data base, the typing results and personal identification information
>> of the DNA profile of an individual in the statewide DNA data
>> base system may be made available to:
>
>> (i)    federal, State, or local law enforcement agencies;
>
>> (ii)   crime laboratories that have been approved by the Director and that
>>        serve federal, State, and local law enforcement agencies;

---

[11] Here the circuit court included a footnote stating: "The 'Director' is defined at § 2-501(d) to mean '... the Director of the Crime Laboratory or the Director's designee.'" (Resp. Ex. 11, p. 11 n.4).

(iii)    a State's Attorney's office or other prosecutorial office; and

(iv)    a person participating in a judicial proceeding in which the data base information may be offered as evidence.

The Petitioner has misconstrued this section to argue that, absent a verification of the test by the Director, results are not admissible.  The plain language of the statute does not set forth such a requirement.  Rather, the statute provides that, once the Director has verified a match, the enumerated individuals and entities may make a written or electronic request to have the results made available.  Therefore, the allegation under § 2-508 lacks merit.

The argument under § 2-510 must also fail.  Under § 2-510, a DNA data base match can only be used to establish probable cause, but cannot be used as direct evidence at trial unless confirmed by additional testing.  In this case, Jennifer Cline, the State's expert witness testified that she matched the "... known oral sample of the Petitioner ...[1] to the evidence collected the crime scene."  In other words, the DNA swab voluntarily given by the Petitioner was matched to the DNA taken from the crime scene.  This was not a data base match.  There was no need to resort to the data base, as there was a sample from the crime scene and a sample obtained from the Petitioner.  This evidence is plainly admissible and does not invoke § 2-510, which concerns matching DNA found at a crime scene to the data base, not to a voluntarily given sample.

In sum, the Petitioner has misconstrued §§ 2-508 and 2-510.  Neither section justifies granting Post-Conviction relief.

(Resp. Ex. 11, pp. 11-12)(footnotes omitted).

As is clear from the post-conviction court's Statement of Reasons and Order, the court thoroughly analyzed Quesenberry's argument regarding §§ Sections 2-508 and 2-510 of the DNA Collection Act.  *Id.*  It found that Quesenberry had misconstrued the above sections of the act.  *Id.* at 12.  There is no mention of a federal constitutional or statutory violation in the state court's opinion, *id.* at 11-12, nor did Quesenberry make any such argument before that court, (ECF No. 13-1).  "It is not the province of a federal habeas court to reexamine state court determinations on state-law questions."  *Oken v. Nuth*, 64 F. Supp. 2d 488, 500 (D. Md. 1999)(quoting *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)).  Therefore, there is no basis for

relief pursuant to 28 U.S.C. § 2254(d)(1).

Moreover, as noted above, the circuit court found, based on the testimony of the state's expert witness, that the DNA swab voluntarily given by the Petitioner was matched to the DNA taken from the crime scene, not to the DNA database sample taken as a result of his prior conviction. (Resp. Ex. 11, pp. 6, 12.) A state court's factual findings are presumed to be correct. 28 U.S.C. § 2254(e)(1). Quesenberry provided no evidence at the post-conviction hearing that a database sample was used at trial,[12] and the circuit court found otherwise. (Resp. Ex. 11, p. 6. ). Nor has he provided any evidence to this Court which would disprove the circuit court's finding. (ECF No. 1; ECF No. 5). Therefore, he has not met his burden of rebutting the presumption of correctness of that finding. 28 U.S.C. § 2254(e)(1).

The flaw in Quesenberry's argument, as the circuit court found, is that no database DNA was used. It is clear from the trial testimony that the DNA used at trial was taken from the sample taken from Quesenberry's saliva found on the victim and the buccal swab taken from Quesenberry. (Resp. Ex. 4, pp. 169-93). The statute, therefore, was not implicated. There is no reason to disturb the post-conviction court's conclusions, and, as a result, Quesenberry's first claim for relief must fail.

## B.  GROUND TWO

Next, "Petitioner alleges his due process rights were violated under the 6th and 14th amendments because: Petitioner was denied Compulsory process of obtaining witnesses in his

---

[12] In fact, Quesenberry argued that his trial counsel was ineffective for not pursuing a DNA match defense available under Public Safety Art. § 2-508. (Resp. Ex. 11, p. 4; ECF No. 13-1, pp. 23, 65). He further argued that his due process rights were violated because no additional testing was performed to compare the DNA taken from the buccal swab to the DNA previously collected from him and because the State obtained a second DNA sample from him. (Resp. Ex. 11, pp. 3-4, 13; ECF No. 13-1, pp. 20, 37, 62-63, 72-73). The post-conviction court rejected all three claims. (Resp. Ex. 11, pp. 13, 15, 19).

favor due to the Court's order denying his motion to suppress." (ECF No. 1, p. 15). In his Reply,

Quesenbery states: "Petitioner's Constitutional Rights [were] violated under Ground Two in his

Petition because facts show that his witness's testimony, which is evidence to support his

defense on the contested issue was not considered by the trier of fact at his trial and appeal in this

case." (ECF 5, p. 3.).

At the post-conviction hearing, in response to questions from his attorney, Quesenberry

argued:

> Q.      ... Petitioner was denied due process of law under the Sixth and Fourteenth
> Amendments to have compulsory process for obtaining witnesses in his favor due
> to the suppression hearing Judge's opinion and order.
>
> A.      Yes.  I do that because he contended that Vertus Humphries,[13] the
> correctional officer, testified for the State and that I called no witnesses.  On
> appeal the Maryland Court of Special Appeals will only view the record that he
> issued and not the trial record.
>
> Q.      Okay.
>
> A.      And this is like a denial of due process of law that my compulsory process
> was not being honored for obtaining witnesses in my favor due to that opinion.
>
> Q.      But the officer testified for the defense, isn't that correct?
>
> A.      Yes.
>
> Q.      And the judge misspoke?
>
> A.      The judge issued an opinion clearly on the first paragraph of the opinion
> that he clearly states that Vertus Humphries, the correctional officer from
> Wicomico, testified for the State.
>
> Q.      Okay.
>
> A.      And her testimony was relevant to the consent issue that she told -- that
> was the law, and this would help my defense on the consent issue.  But the Court

---

[13] In the transcript of the January 30, 2009, hearing on Quesenberry's motion to suppress, the correctional officer's name is spelled "Verdus Humphries."  (Resp. Ex. 2, p. 25).

of Special Appeals doesn't recognize the record, they give him deference, what they say, deference and they only rule on his opinion. ...

(ECF No. 13-1, pp. 71-72; *see also* ECF No. 1, p. 16).

The post-conviction court found:

> At the Post-Conviction hearing, the Petitioner explained that this allegation concerns the Opinion and Order entered by Judge Jackson on February 20, 2009. In that Opinion and Order, Verdus Humphries is identified as a witness for the State.  This was an error, as Verdus Humphries was a witness for the defense at the motions hearing.  The Petitioner alleges that this error in the [Opinion] and Order was prejudicial to him.

> The Petitioner's argument is misplaced.  The error in the Opinion and Order does not go to the legal analysis of the issue in the Opinion and Order, and only appears in the recitation of fact as to which witness testified.  In the Opinion and Order, Verdus Humphrey's  testimony  was  not  incorrectly  quoted  or misunderstood.  Viewed in that light, the mere fact that Mr. [sic] Humphries was mistakenly identified as a witness for the State rather than the defense is not, standing alone, evidence of prejudice to the Petitioner.

> Further, the Petitioner was able to call the witness, and thus, compulsory process was not denied.  This allegation does not provide a basis for relief.

(Resp. Ex. 11, pp. 18-19).

It cannot be said that the circuit court's findings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2).  Again, therefore, the Court finds no basis to question the state court's findings.

## C.  **GROUND THREE**

Finally,

Petitioner states that his rights [were] violated under the 4th, 5th, and 14th Amendments of the United States Constitution, because he was Arrested without

> Probable Cause, and all evidence obtained [was] illegally used at trial, and He was denied the right to have a Franks v. Delaware, 438 U.S. 154 (1978)[,] hearing regarding Probable Cause.

(ECF No. 1, p. 18).  In essence, Quesenberry's argument is that if he had the recording of the 911 call made by Christine Sifford, the victim's mother, to the police he could cast doubt on arresting officer Scott Willey's  statement of probable cause.  (ECF No. 13-1, pp. 29-31).

As previously noted, this claim has been procedurally defaulted.  Therefore, the Court may not address the claim unless Quesenberry can show both cause for the procedural default and prejudice resulting from this Court's failure to consider the claim on the merits, or, alternatively, that failure to consider the merits of the claim would result in a fundamental miscarriage of justice.  *Murray*, 477 U.S. at 495-96.  "Cause" consists of some factor external to the defense that impeded a petitioner's efforts to raise the claim in the state courts at the appropriate time.  *Breard*, 134 F.3d at 620.

> Quesenberrry argues that he has shown cause because the State
>
> has a duty to check for evidence from their own witnesses and present it in this case of serious charges, therefore a <u>911 EMERGENCY CALL PHONE RECORD</u> that a State's witness testified to making in this case that was <u>not</u> KNOWN as the State claims in their DISCLOSURE AND REQUEST on October 6, 2008 regarding specific searches and seizures in the Wicomico County Circuit Court Docket entries case no. 22-K08000 824 is conventional evidence and a reason not attributable to the inexcusable neglect of Petitioner ....

(ECF No. 5, p. 5; *see also* ECF No. 1, p. 29).  Reading Quesenberry's Reply liberally, as it must, *see Estelle v. Gamble*, 429 U.S. 97, 106 (1976), the Court assumes that Quesenberry contends that he has also addressed the prejudice prong:

> Without this said 911 Phone record that compelled the Police Officer to the crime scene and arrest of Petitioner in this case, then the Probable Cause of this arrest is not supported by veracity, reliability, and basis of knowledge as stated in Illinois v. Gates, 462 U.S. 213 (1983), and shows Petitioner's convictions are based on false information.

14

(ECF No. 5 , p. 5).

It appears that Quesenberry is alleging cause based on the State's failure to follow up on the 911 call and provide it to him.  During the post-conviction hearing, during questioning by his counsel regarding issues raised in his final *pro se* amended/supplemental petition filed December 27, 2012, he testified as follows:

> Q      And then the fourth issue that you raise is the request for discovery of the 911 phone call.[14]
>
> A      And I haven't gotten that yet.
>
> Q      You've never gotten that 911 phone call.  So you're saying that there was a discovery violation, is that what you're trying to say?
>
> A      When a prosecutor maintains an open policy it doesn't say I need to file a motion, all I have to do is send a letter.  And I was hoping that you could obtain that for me because it's Maryland Public Information Act is part of that.
>
> Q      Okay.
>
> A      And I never got that so I can cast doubt on the probable cause determination of the Salisbury [officer] Scott Willey.  He said that he got a -- dispatch advised a white male wearing blue shorts and no shirt, and I want to know, because Christine Sifford testified that she made the 911 call but she never saw nobody.

(ECF No. 13-1, pp. 29-30).  He subsequently stated:

---

[14] The issue is framed as a "Request for Discovery of 911 phone call information."  (Resp. Ex. 9).  It appears in the form of a letter to Assistant State's Attorney Jamie Dykes:

> Dear Ms. Dykes:
> I Patrick Quesenberry #356-202, is requesting Discovery of the information under Maryland Rule 4-263 section (d) Disclosure by the State's Attorney, (7) Searches, Seizures, Surveillance, and Pretrial Identification.  All relevant material or information regarding: (B) pretrial identification of the defendant by a State's witness such as the information contained in Christine Sifford's 911 phone call made on August 11, 2008 at about 2:30 a.m. to 3:00 a.m. noted on page 5 in the Amended Supplemental Petition for Post Conviction Relief filed on March 27, 2012 by Judith B. Jones, Assistan[t] Public Defender.  I was not disclosed this said information.  Thank you.

*Id.*

15

THE DEFENDANT: Police Officer Scott Willey of the Salisbury Police Department put in there dispatch advised a white male wearing blue shorts, no shirt, and he detained me.  And who is the dispatch?  It's not radio dispatch as like radio car dispatch, so I can reasonably conclude during trial she made a 911 call and that was not disclosed under the specific searches and seizures of 4-263 section lower case (d)7 specific searches and pretrial identification of a witness, a state witness specifically in this case.

BY MS. JONES:

> Q        So you feel this wasn't disclosed?

> A        It was never disclosed.

> Q        It was not disclosed to you.

> A        And I don't know if a 911 call is discovery under 4-263 lower case d without the necessity of a request.

*Id.*, p. 49.

Asked about the existence of a 911 call at the post-conviction hearing, the Assistant State's Attorney responded:

MS. DYKES: Your Honor, going from memory, I don't believe that the 911 call was ever -- it was never secured.  I never got a recording of it, is my recollection at this point in time.  I'd have to go through all this discovery.

THE COURT: So there's a 911 call and it's directed to the police station and the police dispatch calls Officer Willey, is that the way it worked?

MS. DYKES: That's my -- not having fully reviewed the facts in this case, Your Honor, that's my understanding.  The State's position, Your Honor, is that this allegation, there's no legal basis for any relief.

(ECF No. 13-1, pp. 51-52).[15]

---

[15] In his second reply, Quesenberry describes Ms. Dykes' statement that she did not believe the 911 call was ever secured as a "concession."  (ECF No. 20, p. 5).  He analogizes the situation to a rape case, *Davis v. Pitchess*, 388 F.Supp. 105 (1974), where, Quesenberry states, the "police destroyed the victim's undergarment and vaginal smear slides .... (*Id.*)  However, failing to secure a record of a 911 call, when there was no apparent need to do so, is a far cry from destroying evidence.  Additionally, the Assistant State's Attorney can hardly be said to have "refuse[d] to disclose" evidence she never possessed.  (*Id.*, p. 6)(quoting *Harris v. Super. Ct.*, 35 Cal. App. 3d (1973)).  The cases cited in Quesenberry's second reply do not advance his claim in any way, and the Court rejects the arguments

While Quesenberry did eventually write a letter to the Assistant State's Attorney, as noted above it was contained in his final *pro se* amended/supplemental petition dated December 27, 2012. (Resp. Ex. 9). He also wrote a letter to the Department of Emergency Services, dated June 18, 2013, in which, in a footnote, he requested a record of the 911 call. (ECF No. 1, p. 29). His criminal case docket, however, does not reflect that he made any efforts prior to December, 2012, to obtain a record of the call, (Resp. Ex. 1), nor has he provided any evidence that he did so. By the time he sent his inquiry to the Department of Emergency Services, it was too late. (ECF 1, p. 29)(noting that 911 records were maintained for a period of 180 days).

The Court finds that Quesenberry has failed to show cause for his failure to present his third ground for relief as a specific claim to the state courts. A such the claim is procedurally defaulted. The existence of the call was known to him as early as Officer Willey's August 11, 2008, Statement of Probable Cause. (ECF No. 1, pp. 32-33). The call was the subject of testimony at his trial. (Resp. Ex. 4, p. 86). Quesenberry did nothing to obtain a record of the call until 2012, instead relying on the Assistant State's attorney to produce any record of the call.

Because Quesenberry has not shown cause for the procedural default, the Court need not address the question of prejudice.[16] *See Murray*, 477 U.S. at 496. Moreover, he has made no argument that he is "actually innocent" of the crimes for which he was convicted. *Id.*

In any event, Quesenberry's third ground for relief would fail on the merits, even if it were properly before the Court. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to

---

contained therein.

[16] The Court observes, however, that during the post-conviction hearing the circuit court judge stated that he did not see how the 911 call was related to Quesenberry's allegations. (ECF No. 13-1, p. 52).

exhaust the remedies available in the courts of the State.").   The first part of Quesenberry's argument is that there was no probable cause to arrest him.  (ECF No. 1, p. 18).

Quesenberry raised the lack of probable cause for his arrest, on a different basis, at the state post-conviction hearing.  (Resp. Ex. 11, p. 12; Resp. Ex. 13-1, pp. 61-62).[17]  Here, he challenges Officer Scott Willey's Statement of Probable Cause, alleging that Officer Willey did not have a description of Quesenberry as the officer stated.   (ECF No. 1, pp. 23, 25). Quesenberry argues that the record of the 911 call made by the victim's mother, which was not disclosed to him, would cast doubt on Officer Willey's statement:[18]

> Officer Willey's Statement of Probable Cause reads, in  part, as follows:
>
> On August 11 2008 at approximately 0245 hrs Officer Willey responded to 428 Hammond Street in reference to a burglary.  Dispatch advised that the suspect was a white male wearing blue shorts and was wearing no shirt.  The suspect had already left the residence.  As Officer Willey approached the area he observed the suspect later identified as Patrick Quesenberry walking north on Hammond Street near the residence of 428 Hammond Street.  Officer Willey detained the suspect until other officers arrived on scene.  The suspect was wearing blue shorts and no shirt at this time.   It should also be noted that the suspect had an erection. Officers McMeanime [sic], Hughes, and Burt arrived on the scene at this time.

---

[17] At the post-conviction hearing, Quesenberry presented a similar challenge to probable cause, but on a different ground.  He alleged that he "was denied due process when the State used evidence obtained without probable cause because the search and seizure of Petitioner was unreasonable."  (Resp. Ex. 11, p. 12).  The circuit court  rejected this claim, stating:

> The Petitioner does not directly address the factual basis for this allegation in his pro se Petition for Post-Conviction Relief.   At the Post-Conviction hearing, the Petitioner testified that this allegation challenged whether there was probable cause for the arrest.  According to the Petitioner, at the Preliminary hearing on September 19, 2008, the arresting officer testified to having received a statement from "Siffords" without specifically identifying which of the four different individuals named "Siffords" made the statement. The Petitioner contends that this means that there was no probable cause for the arrest.  This is a bald and unsupported allegation, and does not provide a basis for relief.

*Id.* (citations omitted).

[18] While the 911 call clearly was discussed at the post-conviction hearing, it was not addressed as a separate claim for relief in the circuit court's Statement of Reasons and Order of Court.  (Resp. Ex. 11).

> Officer Willey then met with Christine Sifford, the owner of the residence. Sifford pointed at the suspect and stated that he was in her house and was in bed with her daughter Michelle.  At this time Michelle Sifford had come outside and stated that this was the man who was in her bed with her just minutes ago against her will.

(ECF No. 1, p. 32).  At the post-conviction hearing, Quesenberry testified that "he never had a description of a white male of me, naming me as the suspect.  His description is a white male wearing blue shorts no shirt.  He detained me."  (ECF No. 13-1, p. 47).  Quesenberry continued, "And then it says in the statement of probable cause specifically then later identified as Patrick J. Quesenberry."  *Id.*  Quesenberry charges that Officer Willey "trumped up his own probable cause statement of a description and detained me." *Id.*[19]

There is no basis for Quesenberry's assertion that Officer Willey "trumped up," *id.*, or "fabricated," *id.*, p. 51,  the description of the suspect.  As the post-conviction court found with respect to Quesenberry's other argument regarding probable cause, this is nothing more than a "bald and unsupported allegation," (Resp. Ex. 11, p. 12).  It is pure speculation to assume that Mrs. Sifford's 911 call to the Salisbury Police Department contained anything other than a description of a white male wearing blue shorts and no shirt.

The second part of this ground for relief is that, because Quesenberry was arrested without probable cause, "all evidence obtained [was] illegally used at trial ...."  (ECF No. 1, p. 18).  Because the Court has already found Quesenberry's argument regarding probable cause for his arrest to be baseless, it follows that any evidence obtained after that arrest was procured legally.  In the interest of completeness, however, the Court addresses this portion of the claim.

---

[19] It should be noted that Officer Willey also testified that when he saw Quesenberry, he was wearing blue mesh shorts and tennis shoes, but no shirt.  (Resp. Ex. 4, p. 106).  Defense counsel did not challenge that description on cross-examination, except to ask whether Quesenberry also had a "fannie pack" on.  *Id.*, p. 118.

Quesenberry does not specify what evidence was "illegally used at trial." However, prior to trial the defense filed  motions to suppress statements he made to police shortly after his arrest as well as the results of a buccal swab taken at the detention center.  (ECF No. 1, p. 20).  That is the only evidence referenced in the Petition with regard to suppression.[20]

As noted previously, at the state post-conviction hearing Quesenberry challenged whether there was probable cause and the evidence obtained as a result of that arrest, albeit on a different basis.  (Resp. Ex. 11, p. 12).  The circuit court's analysis regarding that argument is equally applicable here:

> In addition, the Court notes that this allegation challenges the admissibility of evidence based on an improper search and seizure.  In this case, Trial Counsel properly filed a Motion to Suppress and argued all viable issues regarding suppression  at a motions hearing.  The motions judge denied the motion to suppress and the appellate court affirmed the motions judge.  This issue, therefore, has already been finally litigated and is not appropriate for Post-Conviction relief.  Criminal Procedure Article § 7-106(a).

(Resp. Ex. 11, p. 13).

In *Stone v. Powell*, 428 U.S. 465 (1976), the Supreme Court addressed the question of whether a federal court should consider a claim that evidence obtained by an illegal search and seizure was introduced at his trial, when he has previously been afforded an opportunity for full and fair litigation of his claim in the state courts, in ruling on a petition for habeas corpus relief filed by a state prisoner.  *Id.* at 469.  The Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial."  *Id.* at 482; *see also*

---

[20] Even if Quesenberry intends this claim to encompass other evidence, that would not affect this Court's analysis or determination of this issue.

*Doleman v. Muncy*, 579 F.2d 1258, 1262 (4th Cir. 1978)(quoting *Stone*).

In *Doleman*, the Fourth Circuit held that:

[I]n its analysis of a petition for habeas corpus under 28 U.S.C. § 2254, a district court, when faced with allegations presenting Fourth Amendment claims, should, under the rule in *Stone v. Powell*, *supra*, first inquire as to whether or not the petitioner was afforded an Opportunity to raise his Fourth Amendment claims under the then existing state practice. This may be determined, at least in this Circuit, from the relevant state statutes, the applicable state court decisions, and from judicial notice of state practice by the district court.

Second, we hold that when the district has made the "opportunity" inquiry, it need not inquire further into the merits of the petioner's case, when applying *Stone v. Powell*, *supra*, unless the prisoner alleges something to indicate that his opportunity for a full and fair litigation of his Fourth Amendment claim or claims was in some way impaired.

579 F.2d at 1265 (internal citations omitted).

Quesenberry argues that his opportunity for full and fair litigation of his Fourth Amendment claim was impaired because the state court denied his request for a continuance, thereby preventing him from developing the factual basis of the claim. (ECF No. 20, p. 3). However, the absence of a record of the 911 call did not hinder Quesenberry's ability to argue to the post-conviction court that, because it was unclear which "Sifford" made the 911 call, probable cause for his arrest was lacking. Moreover, despite not possessing a record of the call, he was still able to present his allegations regarding the description given in that call to the post-conviction court. Finally, his ability to present other evidentiary arguments was not impaired in any way. Based on the foregoing, the Court concludes that Quesenberry had an opportunity to litigate the issue of the 911 call in the state courts but failed to do so in a timely manner.

The state courts did not incorrectly or unreasonably apply clearly established federal law or unreasonably determine the facts based on the evidence before them. It is clear that Quesenberry had a full and fair opportunity to litigate any arguments that because there was no

probable cause for his arrest, any evidence resulting therefrom was illegally obtained.  He had a motions hearing before trial.  He could have made the above argument to the motions judge during that hearing.  He had the opportunity to do so.  Quesenberry did make the argument to the post-conviction court, even without the 911 call.  The post-conviction court denied his petition.  Quesenberry appealed both denials to the Court of Special Appeals, which also denied them.  That the current claim is based on a different factual predicate is of no moment.  In essence, the claim is the same.  Therefore, the Court finds that this issue, too, has been finally litigated and is not appropriate for post-conviction relief.

Lastly, in the third portion of this claim, Quesenberry argues he was denied the right to have a *Franks v. Delaware* hearing challenging Officer Willey's probable cause.  (ECF No. 1, p. 18).  As noted previously, Quesenberry alleges that Officer Willey committed perjury in that he fabricated his description of Quesenberry in his Statement of Probable Cause.  (ECF No. 13-1, p. 50).  During the post-conviction hearing he stated: "I believe that if I was given the opportunity to obtain that 911 record that I could cast reasonable doubt, that I could have a Franks Delaware hearing, that his information was false and erroneous."  *Id.* at 46; *see also id.* at 48.

In *Franks v. Delaware*, the Supreme Court held that

> where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.  In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

438 U.S. at 155-56.  The court elaborated on its holding as follows:

There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant.   To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine.   There must be allegation of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof.   They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons.   Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. ...   Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.   On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing.   Whether he will prevail at that hearing is, of course, another issue.

*Id.* at 171-72 (footnote omitted)..

It is clear that Quesenberry has not made the required showing.   The Court has already found that there is no support in the record for Quesenberry's allegation that Officer Willey "trumped up" his description of Quesenberry.   Further, as also noted previously, it is pure speculation that the description given by Mrs. Sifford is at odds with the description given to Officer Willey by dispatch, as Quesenberry assumes.   Moreover, having already found that Officer Willey had probable cause to arrest Quesenberry, by extension Quesenberry would have had no basis to request a *Franks* hearing.   Accordingly, Quesenberry's third ground for relief is rejected in its entirety.

Arguably, Quesenberry has procedurally defaulted his first claim and failed to present cognizable claims with respect to his second and third grounds for relief.   In any event, Quesenberry's claims fail on the merits, giving due deference to the state court's factual findings. The Petition, therefore, is **DENIED AND DISMISSED.**   A separate order follows.

## CONCLUSION

A Certificate of Appealability ("COA") will not issue because Quesenberry has not made a "substantial showing of the denial of a constitutional right."  28 U.S.C. 2253(c)(2); *see* Rule 11(a) of the *Rules Governing Section 2254 Proceedings in the United States District Courts*.  A separate order follows.

___*May 19, 2016*_____       _____/s/_____
Date                                                            RICHARD D. BENNETT
                                                                   UNITED STATES DISTRICT JUDGE